1

2

3

4

5

6

7

8              UNITED STATES DISTRICT COURT

9            NORTHERN DISTRICT OF CALIFORNIA

10                 SAN JOSE DIVISION

11   JANET L. SANDERS, et. al.,              )    Case No.: 5:13-cv-03205 EJD
                                             )
12              Plaintiff(s),                )    **ORDER GRANTING MOTION TO**
                                             )    **COMPEL ARBITRATION; DENYING**
13        v.                                 )    **MOTIONS TO DISMISS**
                                             )
14   COUNTY OF SANTA CRUZ, et. al.,          )
                                             )    **[Docket Item Nos. 47, 50, 61, 66, 71, 87]**
15              Defendant(s).                )
                                             )
16                                           )
                                             )
17   _____

18        After Christy Ann Sanders ("Decedent") died while in custody at the Santa Cruz County

19   Main Jail, Plaintiffs Janet L. Sanders, Larry Sanders, and Daniel Ryan Pierce, by and through his

20   guardian ad litem Janet Sanders ("Plaintiffs"), initiated the above-entitled action against

21   Defendants County of Santa Cruz and Phil Wowak, in his capacity as the county sheriff

22   (collectively, the "County Defendants"), for civil rights violations and related causes of action.  In

23   response, the County Defendants filed a Third-Party Complaint against Dignity Health, doing

24   business as Dominican Hospital ("Dominican Hospital"), as well as a number of doctors and

25   medical organizations involved in Decedent's treatment (collectively, "Third Party Defendants"),

26   for express and equitable indemnity.

27

28                                         1
     Case No.: 5:13-cv-03205 EJD
     ORDER GRANTING MOTION TO COMPEL ARBITRATION; DENYING MOTIONS TO
     DISMISS

United States District Court
For the Northern District of California

Presently before the court are six motions directed at the Third-Party Complaint: (1) a Motion to Compel Arbitration filed by Dominican Hospital (Docket Item No. 47); (2) a Motion to Dismiss filed by Roy Martinez, M.D. and Radiology Medical Group of Santa Cruz County, Inc. (Docket Item No. 50); (3) two Motions to Dismiss filed by D. Christopher Danish, D.O., Bradley Whaley, M.D., Marc B. Yellin, M.D., and California Emergency Physicians Medical Group (sued as "Santa Cruz Emergency Physicians Medical Group") (Docket Item Nos. 61, 71)[1]; (4) a Motion to Dismiss filed by National Medical Registry, Inc., doing business as Solvere ("Solvere") (Docket Item No. 66); and (5) a Motion to Dismiss filed by James J. Helmer, M.D. (Docket Item No. 87).

Subject matter jurisdiction arises under 28 U.S.C. §§ 1331 and 1367. The court found these matters suitable for decision without oral argument pursuant to Civil Local Rule 7-1(b) and previously vacated the associated hearing. For the reasons explained below, Dominican Hospital's Motion to Compel Arbitration will be granted, while the various Motions to Dismiss will be denied.

## I. BACKGROUND

### a. Allegations from Plaintiffs' Complaint

Decedent was 27 years of age at the time of her death on August 25, 2012. By that date, Decedent had been incarcerated at the Santa Cruz County Main Jail since on or about August 12, 2012, and was being held on two separate warrants, one involving theft and another involving drug possession.

While at the Main Jail on August 12, 2012, Decedent complained of flank and chest pain and painful inability to breathe. She was taken to Dominican Hospital, where she received a chest x-ray that "showed no infiltration, no consolidation and no widening of the mediastinum." She was released and returned to the Main Jail, and there was no follow up on that information by Defendants.

---

[1] Docket Item Nos. 61 and 71 are two identical motions to dismiss filed by the same parties, save for the title of Docket No. 71 as an "Amended Motion to Dismiss." The court will treat Docket Item No. 71 as the controlling motion filed by these parties.

Case No.: 5:13-cv-03205 EJD
ORDER GRANTING MOTION TO COMPEL ARBITRATION; DENYING MOTIONS TO DISMISS

United States District Court
For the Northern District of California

On August 13, 2012, Decedent contacted the Main Jail's medical personnel and complained of pain to the left rib area that wrapped around her back.  She stated the pain was sharp.  She was told to contact medical personnel again if the pain worsened.

On August 17, 2012, Decedent was confirmed to restart heroin detox protocol, which was thereafter administered by the Main Jail's medical personnel.

On August 18, 2012, medical personnel responded to a "Code 3," which was initiated because Decedent was experiencing minor seizure-like activity.  Decedent stated that she was having difficulty breathing and asked to be taken back to Dominican Hospital.  An on-duty nurse and Doctor Helmer advised Decedent, however, that they felt it unnecessary at that time for Decedent to be sent to the hospital.

On August 20, 2012, Decedent advised medical personnel of "pain in [her] entire chest," but her request to be seen for a secondary medical evaluation was denied.  On August 23, 2012, Decedent advised medical personnel that she "needed to go to the hospital," that "something was wrong with" her, but that "no one cares."

On August 24, 2012, Decedent told medical personnel that she had a fever and requested a temperature check.  Nurse Thomsen said he was unable to provide her with a temperature check.  Decedent then stated that she would kill herself.  After that statement, Decedent was transferred to the O-13 unit for the night.  In the morning, Decedent signed a "no harm contract" and was thereafter returned to her original cell.

On August 25, 2012, medical personnel responded to Decedent's cell and found her pale, non-responsive, and without a pulse or blood pressure.  An oral airway was put into place and cardiopulmonary resuscitation was initiated.  Lifesaving efforts were continued by medical personnel until paramedics arrived at the scene; however, Decedent had already expired in her cell by that time.  She was transported to Sheriff-Coroner's medical facility for further examination.

On August 27, 2012, Dr. Richard Mason, a Forensic Pathologist, completed an autopsy examination of Decedent.  Dr. Mason determined the cause of death to be "bilateral pulmonary melectasis with anoxia due to bilateral empyema, severe on right due to pulmonary abscesses, right

1    upper lobe of lung with contributory causes of pulmonary emboli, fatty metamorphosis of liver and

2    Hepatitis C," and that she died of natural causes.

3         Despite Dr. Mason's findings, Plaintiffs allege that the Main Jail's medical personnel failed

4    to administer proper medical care and failed to monitor the likely consequences of their inaction,

5    which they believe resulted in Decedent's death.  They filed the Complaint underlying this action

6    on July 11, 2013.

7                        **b. Allegations from the Third-Party Complaint**

8         Prior to her incarceration, on or about August 7, 2012, Decedent presented to the

9    emergency room at Dominican Hospital with complaints of difficulty breathing for the past week,

10   cough with green phlegm, and chills.  She had a history of deep vein thrombosis and significant IV

11   drug/heroin use, among other conditions.  She was seen by Bradley D. Whaley, M.D., who

12   examined her and diagnosed her with bronchitis, allegedly without obtaining her complete history,

13   chest x-ray, or blood work.  She was discharged the same day.

14        On or about August 13, 2012, Decedent returned to the emergency room at Dominican

15   Hospital.  Decedent was in the custody at that time, and she was accompanied by sheriff's deputies.

16   Decedent complained of acute chest pain in her lower ribs, difficulty breathing, and an occasional

17   cough.  D. Christopher Danish, D.O. and/or Marc Yellin, M.D. examined Decedent and ordered a

18   chest x-ray and blood work.

19        Radiologist Roy Martinez, M.D. interpreted Decedent's chest x-ray as showing the

20   presence of a new 3.2 cm density in the right upper lobe of her lung.  He provided a differential

21   diagnosis of "round pneumonia versus inflammatory etiology versus neoplasm," and recommended

22   close follow-up.  But despite the x-ray that showed a lesion in Decedent's lung and blood work that

23   allegedly pointed to infection, Dr. Danish and Dr. Yelling determined that the x-ray was clear and

24   diagnosed Decedent with pleuritic chest wall pain.  They prescribed Motrin and discharged

25   Decedent back to the jail approximately three hours after her arrival at the hospital.  No follow-up

26   treatment was recommended or prescribed.

27

28

Case No.: 5:13-cv-03205 EJD
ORDER GRANTING MOTION TO COMPEL ARBITRATION; DENYING MOTIONS TO
DISMISS

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

1    Decedent ultimately died at the jail on August 25, 2012.  In the Third Party Complaint, the

2    County Defendants allege that Drs. Danish, Yellin, Martinez and Dominican Hospital

3    misdiagnosed, misrepresented, misinterpreted, and/or failed to alert the County Defendants to

4    Decedents' true medical condition, the lesion shown on her chest x-ray, and the results of her blood

5    work when they discharged Decedent back to the jail.  They also allege that James Helmer, M.D.,

6    Decedent's primary physician at the Main Jail and an employee of Solvere, was negligent and/or

7    deliberately indifferent to Decedent's serious medical needs.

8    **II.  LEGAL STANDARD**

9        **a.  Motion to Compel Arbitration**

10    The Federal Arbitration Act ("FAA") mandates that written agreements to arbitrate disputes

11    "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for

12    the avoidance of any contract."  9 U.S.C. § 2.  "By its terms, the Act 'leaves no place for the

13    exercise of discretion by a district court, but instead mandates that district courts shall direct the

14    parties to proceed to arbitration on issues as to which an arbitration agreement has been signed.'"

15    Chiron Corp. v. Ortho Diagnostic Sys., Inc., 207 F.3d 1126, 1130 (9th Cir. 2000) (citing Dean

16    Witter Reynolds Inc. v. Byrd, 470 U.S. 213, 218 (1985)).  Accordingly, a court's role is limited to

17    determining: (1) whether the parties agreed to arbitrate and, if so, (2) whether the scope of that

18    agreement to arbitrate encompasses the claims at issue.  Id.  If the party seeking arbitration

19    establishes these two factors, the court must compel arbitration.  9 U.S.C. § 4; Chiron, 207 F.3d at

20    1130.

21    If a contract contains an arbitration clause, the clause is presumed valid (AT & T Techs.,

22    Inc. v. Commc'n Workers of America, 475 U.S. 643, 650 (1986)) and "any doubts concerning the

23    scope of arbitrable issues should be resolved in favor of arbitration" (Three Valleys Mun. Water

24    Dist. v. E.F. Hutton & Co., 925 F.2d 1136, 1139 (9th Cir. 1991)).  Thus, the party opposing

25    arbitration has the burden of showing that an arbitration clause is invalid or otherwise

26    unenforceable.  Engalla v. Permanente Med. Grp., Inc., 15 Cal. 4th 951, 972 (1997).

27

28

Case No.: 5:13-cv-03205 EJD
ORDER GRANTING MOTION TO COMPEL ARBITRATION; DENYING MOTIONS TO
DISMISS

1    Nonetheless, "arbitration is a matter of contract and a party cannot be required to submit to

2    arbitration any dispute which he has not agreed so to submit." <u>AT & T</u>, 475 U.S. at 648 (quoting

3    <u>Steelworkers v. Warrior & Gulf Navigation Co.</u>, 363 U.S. 574, 582 (1960)).

4         **b.  Motion to Dismiss**

5         Federal Rule of Civil Procedure 8(a) requires a plaintiff to plead each claim in the

6    complaint with sufficient specificity to "give the defendant fair notice of what the . . . claim is and

7    the grounds upon which it rests." <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007) (internal

8    quotations omitted).  A complaint which falls short of the Rule 8(a) standard may be dismissed if it

9    fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6).  Dismissal under

10   Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim is "proper only where there is

11   no cognizable legal theory or an absence of sufficient facts alleged to support a cognizable legal

12   theory." <u>Shroyer v. New Cingular Wireless Servs., Inc.</u>, 606 F.3d 658, 664 (9th Cir. 2010)

13   (quoting <u>Navarro v. Block</u>, 250 F.3d 729, 732 (9th Cir. 2001)).  In considering whether the

14   complaint is sufficient to state a claim, the court must accept as true all of the factual allegations

15   contained in the complaint.  <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009).  While a complaint need

16   not contain detailed factual allegations, it "must contain sufficient factual matter, accepted as true,

17   to 'state a claim to relief that is plausible on its face.'" <u>Id.</u> (quoting <u>Twombly</u>, 550 U.S. at 570).

18   **III. DISCUSSION**

19        The County Defendants' Third-Party Complaint contains two claims.  The first claim, for

20   express indemnification, is against Dominican Hospital and Solvere.  The second claim, for

21   equitable indemnification, is against all Third-Party Defendants, including Dominican Hospital and

22   Solvere.

23        Dominican Hospital's motion (Docket No. 47) seeks to compel arbitration of both claims.

24   The remaining motions, brought by the other Third-Party Defendants (Docket Nos. 50, 61, 66, 71,

25   87), seek dismissal of the second claim under Rule 12.  Each motion is discussed below.

26

27

28

6

### a.   Dominican Hospital's Motion to Compel Arbitration (Docket No. 47)

Dominican Hospital contends that a Hospital Services Agreement (the "Agreement") between it and the County, which was executed in 1994 and was attached to the Third-Party Complaint, requires that the County Defendants' indemnification claims against Dominican Hospital be submitted to arbitration.  In response, the County Defendants argue that the Agreement does not contain a valid and enforceable arbitration clause and, even if it does, the present dispute does not fall within its purview.

### i.   Whether the Agreement provides for arbitration of disputes

Under both federal and state law, the threshold question presented by a request to compel arbitration is whether there is an agreement to arbitrate.  Cheng-Canindin v. Renaissance Hotel Assocs., 50 Cal. App. 4th 676, 683 (1996); see also Simula, Inc. v. Autoliv, Inc., 175 F.3d 716, 719-20 ("Under § 4 of the FAA, the district court must order arbitration if it is satisfied that the making of the agreement for arbitration is not in issue.").  To determine whether the parties agreed to arbitration, the court begins with the language of the clause at issue.  Section 7.13 of the Agreement states:

> In the event of any dispute between the parties hereto regarding the provisions under this Agreement and if the parties fail to resolve such dispute within fifteen (15) days following written notice from either party to the other party of the existence of such dispute, either party by written notice thereof to the other party may request resolution of the dispute by a Board of Adjustments to be composed of three (3) persons as follows: one representative of each of the two parties and a third member to be selected by the two party representatives.  The Board of Adjustments shall decide the dispute within fifteen (15) days after referral of the dispute to the Board of Adjustments, and its decision, which shall be by at least majority vote, shall be final and binding on the parties.  Each party shall bear its own fees and expenses of impasse resolution and shall share equally the fees and expenses, if any, of the third member of the Board of Adjustments selected.

The County Defendants contend that Section 7.13 is vague and does not clearly express an intention to arbitrate.  Indeed, the word "arbitration" does not appear in the text of Section 7.13; rather, it calls for the referral of disputes to a three-member "Board of Adjustments."  The County Defendants state that it is unaware of any organized, pre-existing "Board of Adjustments" and that

Case No.: 5:13-cv-03205 EJD
ORDER GRANTING MOTION TO COMPEL ARBITRATION; DENYING MOTIONS TO DISMISS

1   the term typically refers to a governmental, quasi-governmental, or labor board pre-organized for

2   the purpose of deciding specific categories of regulatory, zoning, or employment matters.  For

3   these reasons, the County Defendants believe that Section 7.13 is not a valid and enforceable

4   arbitration clause.

5       The court applies general state law contract principles - here the law as it is in California -

6   to determine whether a valid written agreement to arbitrate exists.  Lowden v. T-Mobile USA, Inc.,

7   512 F.3d 1213, 1217 (9th Cir. 2008).  These general principles take into account "that '[t]he basic

8   goal of contract interpretation is to give effect to the parties' mutual intent at the time of

9   contracting.'"  Mitri v. Arnel Mgmt. Co., 157 Cal. App. 4th 1164, 1170 (2007) (quoting Founding

10  Members of the Newport Beach Country Club v. Newport Beach Country Club, Inc., 109 Cal.

11  App. 4th 944, 955 (2003)).  To do so, "[t]he language of a contract is to govern its interpretation, if

12  the language is clear and explicit, and does not involve an absurdity."  Cal. Civ. Code § 1638.  The

13  contract's words should be interpreted in their "ordinary and popular sense, rather than according

14  to their strict legal meaning; unless used by the parties in a technical sense, or unless a special

15  meaning is given to them by usage, in which case the latter must be followed."  Cal. Civ. Code §

16  1644.  Furthermore, "[t]he whole of a contract is to be taken together, so as to give effect to every

17  part, if reasonably practicable, each clause helping to interpret the other."  Cal. Civ. Code § 1641.

18      The County Defendants' restrictive interpretation of Section 7.13 fails under these rules

19  because it is apparent the section is an arbitration clause even though it is not explicitly designated

20  as such.  See Painters Dist. Council No. 33 v. Moen, 128 Cal. App. 3d 1032, 1036 (1982) (holding

21  that failure to deem a procedure as "'arbitration' is not fatal to its use as a binding mechanism for

22  resolving disputes between the parties . . . [m]ore important is the nature and intended effect of the

23  proceeding.").  No matter the moniker used, a dispute resolution procedure is considered an

24  arbitration if "there is a third party decision maker, a final binding decision, and a mechanism to

25  assure a minimum level of impartiality with respect to the rendering of that decision."  Cheng-

26  Canindin, 50 Cal. App. 4th at 687-88.  Here, Section 7.13 provides for  the requisite "third party

27  decisionmaker" since the contemplated Board of Adjustments is to be composed of one

28

8

Case No.: 5:13-cv-03205 EJD
ORDER GRANTING MOTION TO COMPEL ARBITRATION; DENYING MOTIONS TO DISMISS

United States District Court
For the Northern District of California

1    representative from each party, along with a third member to be selected by the two

2    representatives.  Provisions calling for similar procedures in selecting the decisionmakers have

3    been deemed "arbitrations" under California law.  See Silva v. Mercier, 33 Cal. 2d 704, 708

4    (1949); see also Moen, 128 Cal. App. 3d at 1036-37.  The fact there is no pre-existing Board of

5    Adjustments is of no moment, because Section 7.13 itself specifically defines how a Board of

6    Adjustments is to be created, and nothing in the clause suggests that one cannot be created anew.

7         In addition, Section 7.13 contains "a mechanism to assure a minimum level of impartiality"

8    because both sides are equally represented on the Board of Adjustments, and each side may then

9    equally participate in the selection of, and equally pay, the third member.  And since a majority

10   decision by the Board of Adjustments is final and binding on the parties, all of the attributes of an

11   agreement to arbitrate are present.  Cheng-Canindin, 50 Cal. App. 4th at 687-88.  Thus, the court

12   finds that Section 7.13 is an agreement to arbitrate because it contemplates a procedure with the

13   "nature and intended effect" of arbitration.  See Moen, 128 Cal. App. 3d at 1036.  That was the

14   parties' intent under a plain language of the Agreement.

15                    **ii.   Scope of the arbitration clause**

16        The County Defendants additionally argue that, even if Section 7.13 is an agreement to

17   arbitrate, the present indemnification dispute falls outside its scope.  As indicated, Section 7.13

18   requires arbitration of "any dispute between the parties hereto regarding the provisions under this

19   Agreement."

20        "It is well established 'that where the contract contains an arbitration clause, there is a

21   presumption of arbitrability.'" Comedy Club, Inc. v. Improv West Assocs., 553 F.3d 1277, 1284

22   (9th Cir. 2009)(quoting AT&T Techs., Inc., 475 U.S. at 650).  Thus, while the court employs

23   general state law principles of contract interpretation to determine the scope of an arbitration

24   clause, it must do so "'while giving due regard to the federal policy in favor of arbitration by

25   resolving ambiguities as to the scope of arbitration in favor of arbitration.'"  Mundi v. Union Sec.

26   Life Ins. Co., 555 F.3d 1042, 1044 (9th Cir. 2009)(quoting Wagner v. Stratton Oakmont, Inc., 83

27   F.3d 1046, 1049 (9th Cir. 1996)).

28

Case No.: 5:13-cv-03205 EJD
ORDER GRANTING MOTION TO COMPEL ARBITRATION; DENYING MOTIONS TO DISMISS

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

1    Here, the salient portion of Section 7.13 contains broad language.  Indeed, under a

2 straightforward reading, the clause requires that *any* dispute between the parties, falling under *any*

3 provision of the Agreement, be submitted to the Board of Adjustments.  Since the County

4 Defendants' third-party claims against Dominican Hospital undoubtedly fall under Section 7.8 of

5 the Agreement,[2] the court concludes that these claims must be submitted to arbitration.  This would

6 include the claim for equitable indemnity because the Third-Party Complaint makes clear the

7 County Defendants seek indemnification based on alleged actions undertaken by Dominican

8 Hospital as a result of obligations imposed by the Agreement.  See Comedy Club, Inc., 502 F.3d at

9 1108 (holding that a "rational interpretation" of a broadly-worded arbitration agreement was "to

10 say that the arbitrator could decide both equitable and legal claims.").[3]

11    The County Defendants' interpretation of Section 7.13, based primarily on In re TFT-LCD

12 (Flat Panel) Antitrust Litigation, No. 11-cv-5781 SI, 2013 U.S. Dist. LEXIS 102307, WL (N.D.

13 Cal. July 18, 2013), is misplaced.  In that case, one of this court's colleagues found a clause calling

14 for the arbitration of disputes "regarding the terms" of an agreement to be too narrow to encompass

15 an antitrust claim brought against a technology manufacturer by its former supplier.  The court held

16 that, while the parties' agreement listed the prices for products, it did not discuss how those prices

17

18 ─────────────────────

[2] Section 7.8 states:

19

20    HOSPITAL agrees to defend in the name of and pay all costs of all legal proceedings and to pay any
   sums which COUNTY may become liable to pay as damages imposed by law for any bodily injury

21    or death suffered or alleged to have been suffered by any person by reason of the care or treatment of
   County responsible patients provided by HOSPITAL or by its agents or employees under this

22    Agreement.

23 [3] For a similar reason, the fact that the Third-Party Complaint mentions Decedent's treatment prior to incarceration
does not transform the claim for equitable indemnity into an actual challenge to that treatment.  Neither the Third-Party

24 Complaint nor the equitable indemnity claim itself can be plausibly interpreted in that way because the County
Defendants do not have standing to question treatment Decedent received as a private individual.  Lujan v. Defenders

25 of Wildlife, 504 U.S. 555, 560 (1992) ("An injury in fact is an invasion of a legally protected interest that is both (1)
concrete and particularized and (2) actual or imminent, as opposed to conjectural or hypothetical.").  The County

26 Defendants could not have been injured if the pre-incarceration medical treatment was negligent.  The basic allegations
relating to this treatment merely provide context for the treatment she received while incarcerated, or emphasize the

27 allegation that Dominican Hospital knew of Decedent's medical condition but failed to account for it when she
appeared for treatment while incarcerated.  But even if there are valid arguments to the contrary, the court would still

28 compel arbitration under these circumstances.  Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp., 460 U.S. 1, 24-
25 (1983) ("[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration.").

10

United States District Court
For the Northern District of California

1  were determined - the issue relevant to the antitrust claims.  On that ground, the court denied the

2  technology manufacturer's motion to compel arbitration.

3          The Agreement at issue in this case is distinguishable in two important aspects.  First, the

4  arbitration clause is not limited solely to disputes over the Agreement's terms; it covers any dispute

5  falling under any provision of the Agreement.  While the County Defendants may stop reading

6  Section 7.13 after the phrase "regarding the provisions" in an effort to limit the section's scope to

7  one relating solely to disputes over language, this court may not do so under the applicable rules of

8  interpretation.  See Cal. Civ. Code § 1641.  The subsequent phrase "under this Agreement" must

9  mean something, and it is a phrase interpreted broadly.  Bldg. Materials & Constr. Teamsters Local

10  No. 216 v. Granite Rock Co., 851 F.2d 1190, 1193-94 (9th Cir. 1988).  Second, in direct contrast to

11  In re TFT-LCD (Flat Panel) Antitrust Litigation, the Agreement's provisions sufficiently relate to

12  the issues raised in the Third-Party Complaint: the level of care expected to be provided to county-

13  responsible patients is discussed in Article 3, and indemnification is discussed in Section 7.8.

14          Accordingly, since the Agreement contains a valid and enforceable arbitration clause, and

15  since the claims raised by the Third-Party Complaint fall within the scope of that clause,

16  Dominican Hospital's Motion to Compel Arbitration will be granted.

17          **b.  The motions to dismiss (Docket Nos. 50, 61, 66, 71, 87)**

18          The remaining motions, each brought by Third-Party Defendants other than Dominican

19  Hospital, all seek dismissal of the County's second claim for equitable indemnity, arguing that the

20  County's claim is barred by law.  Since most of the arguments overlap, the court will consider

21  them together for ease of organization.

22          **i.  Equitable indemnity based on § 1983**

23          There is no federal right to indemnification provided in 42 U.S.C. § 1983.  Banks v. City of

24  Emeryville, 109 F.R.D. 535, 539 (N.D. Cal. 1985).  Thus, to the extent that the County "may be

25  trying to seek indemnity by way of the third party complaint based directly on § 1983, the third

26  party defendants are correct in asserting that impleader is improper."  Id.

27

28

Case No.: 5:13-cv-03205 EJD
ORDER GRANTING MOTION TO COMPEL ARBITRATION; DENYING MOTIONS TO
DISMISS

### ii. Equitable indemnity based on Rule 14

Although the County may not base its claim for indemnity directly on § 1983, Rule 14 of the Federal Rules of Civil Procedure allows a defending party to "serve a summons and complaint on a nonparty who is or may be liable to it for all or part of the claim against it."  Rule 14 neither creates nor enlarges upon the substantive rights of the parties, but merely provides the procedure for the assertion of those rights under applicable state law.  Weil v. Dreher Pickle Co., 76 F.R.D. 63, 66 (W.D. Okla. 1977).  Rule 14 actions are normally interpreted to allow claims even though they do not allege the same cause of action or the same theory of liability as the original complaint.  Givoh Assocs. v. American Druggists Ins. Co., 562 F. Supp. 1346, 1350 (E.D.N.Y. 1983).  Thus, impleader should be allowed if the third party complaint arises out of the same set of operative facts, and "if under some construction of facts which might be adduced at trial, recovery might be possible."  Tiesler v. Martin Paint Stores, Inc., 76 F.R.D. 640, 643 (E.D. Pa. 1977).  If there is any possible scenario under which the third party defendants may be liable for all or part of the defendants' liability to the plaintiffs, the third party complaint should be allowed to stand.  Banks, 109 F.R.D. at 540.

Here, Plaintiffs' Complaint alleges five causes of action.  The only cause of action asserted against the County Defendants is the first one, for violation of § 1983, which seeks to hold the County Defendants liable for general, special, and punitive damages related to Decedent's death.[4]  Applying the law discussed in the preceding paragraph, the court should allow impleader of any Third-Party Defendant who "may be liable for all or part of" the County Defendant's liability to Plaintiffs.  Such is the case here.

As the County Defendants point out, Plaintiffs assert a common law negligence claim which rests on the same set of operative facts as the § 1983 claim against the County Defendants.  Although the claim is presently asserted against "Does 51-200," it is inescapable that Third-Party Defendants, or at least a portion of them, come within this group's definition: "Sheriff's deputies, detention officers or other employees or agents of the County employed at the Main Jail,"

---

[4] The other causes of action are asserted against unknown "doe" defendants.

12

Case No.: 5:13-cv-03205 EJD
ORDER GRANTING MOTION TO COMPEL ARBITRATION; DENYING MOTIONS TO DISMISS

1    "physicians, nurses and other healthcare practitioners who are employees or agents of County

2    employed at Main Jail," and "independent contractors providing medical and/or professional

3    services to inmates brought to Main Jail for treatment of medical needs and conditions while

4    incarcerated at Main Jail."

5           That being the case and should Plaintiffs prevail on both their § 1983 claim and on their

6    negligence claim, there would be significant overlap between the measure of damages for the two

7    claims, because damages for both would be measured on the same theory of compensation.  Carey

8    v. Piphus, 435 U.S. 247, 253 (1978) (holding that for a § 1983 action, "the elements and

9    prerequisites for recovery of damages . . . should parallel those for recovery of damages under the

10   law of torts.").  Moreover, damages for the two claims, if liability is proven, would necessarily

11   overlap to some degree, if not completely, because "the compensatory damage principle dictates no

12   double recovery, for by definition, double recovery is antithetical to compensatory damages."

13   Fuller v. Capitol Sky Park, 46 Cal. App. 3d 727, 732 (1975).

14          Thus, because there is a possible scenario under which Third-Party Defendants may be

15   liable for all or part of the County Defendant's liability to Plaintiffs, the equitable indemnity claim

16   will not be dismissed as barred as matter of law.  See Banks, 109 F.R.D. at 540.

17              ### iii.   Remaining arguments against equitable indemnification

18          Third-Party Defendants make two additional arguments in support of their motions.

19   Neither is meritorious.

20                   #### 1.   The distinction between individuals employed at the Main Jail

21                        #### and individuals employed at Dominican Hospital

22          Several of the Third-Party Defendants are alleged to have been employed at Dominican

23   Hospital rather than at the Main Jail.  These Third-Party Defendants point out that Plaintiffs'

24   allegations of negligence only relate to the supervision and care provided at the Main Jail and not

25   at Dominican Hospital, arguing that the failure of Plaintiffs to make allegations against Dominican

26   Hospital employees invalidates the indemnification claim.  Even so, "[a]s a matter of procedure,

27   Rule 14 does not require that the third party defendant be liable to the original plaintiff in order for

28

13

Case No.: 5:13-cv-03205 EJD
ORDER GRANTING MOTION TO COMPEL ARBITRATION; DENYING MOTIONS TO
DISMISS

the original defendant to proceed with his claim against a third party defendant and recover judgment thereon." Huggins v. Graves, 337 F.2d 486, 489 (6th Cir. 1964).  Accordingly, this argument is rejected as a reason to dismiss the claim.

### 2. The contract between the County and Solvere

Solvere contends that the County has no viable claim for equitable indemnity because of the existence of a contract between Solvere and the County which contains an express indemnity provision.  Solvere cites the general principle that "[a]n action does not lie on an implied contract where there exists between the parties a valid express contract which covers the identical subject matter." Mediterranean Enterprises, Inc. v. Ssangyong Corp., 708 F.2d 1458, 1464 (9th Cir. 1983). The County Defendants' claim for equitable indemnity, however, is not premised on an implied contract theory, but instead seeks to establish respective liabilities.  Indeed, not every claim for equitable indemnity requires an assertion of implied contract.  See Aetna Life & Cas. Co. v. Ford Motor Co., 50 Cal. App. 3d 49, 52 (1075) (holding that equitable indemnity applies "in cases in which one party pays a debt for which another is primarily liable and which in equity and good conscience should have been paid by the latter party.").  Under the facts alleged here, the Third-Party Defendants owed a duty of care to competently provide medical treatment to Decedent which could support an equitable indemnification claim independent of any contract.

Since the court has found no persuasive reason to sustain them, the Third-Party Defendants' motions to dismiss the claim for equitable indemnity will be denied.

### IV. ORDER

For the foregoing reasons, Dominican Hospital's Motion to Compel Arbitration (Docket No. 47) is GRANTED.  The claims asserted against Dominican Hospital in the County Defendants' Third-Party Complaint are STAYED pending the completion of arbitration between these parties.

The Motions to Dismiss are DENIED (Docket Nos. 50, 61, 66, 71, 87).

**IT IS SO ORDERED.**

Dated: September 19, 2014

_____
EDWARD J. DAVILA
United States District Judge

Case No.: 5:13-cv-03205 EJD
ORDER GRANTING MOTION TO COMPEL ARBITRATION; DENYING MOTIONS TO DISMISS